# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 2 C 2601 | **DATE** | 6/17/2004 |
| **CASE TITLE** | U.S.A. ex rel Dennis Thompson, Jr. vs. Kenneth R. Briley | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2)
(10)■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: For all of the foregoing reasons, we deny [1-1] the Section 2254 petition for a writ of habeas corpus brought by Petitioner Dennis Thompson, Jr.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 21 2004 | |
| | Notified counsel by telephone. | | date docketed | 33 |
| ✓ | Docketing to mail notices. | | JXM docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| TSA | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel.<br>DENNIS THOMPSON JR.,<br><br>Petitioner<br><br>v.<br><br>KENNETH R. BRILEY<br><br>Respondent. | No. 02 C 2601<br>Judge Wayne R. Andersen |

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on the petition of Dennis Thompson, Jr. for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, we deny the petition for habeas corpus.

## BACKGROUND

Petitioner Dennis Thompson, Jr. does not challenge the statement of facts set forth in the order of the Illinois Appellate Court affirming his convictions for first-degree murder. *People v. Thompson*, 713 N.E.2d 832 (1st Dist. 1997). For purposes of federal habeas review, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e). Accordingly, we adopt the facts as our own.

In the Circuit Court of Cook County, Petitioner was convicted of two counts of first-degree murder for the deaths of Dennis Thompson, Sr., Petitioner's father, and Don Renee Rouse, a female acquaintance of Thompson, Sr. Petitioner's bench trial took place in May 1995. The evidence presented at trial established that on March 26, 1994, Petitioner went to his father's

1

home in Dolton, Illinois with a loaded gun and fatally shot his father in the head from behind and at close range as the deceased was bent over and looking in the refrigerator. He then shot Rouse, who survived long enough to call Dolton police and inform them that Petitioner had shot her and Thompson, Sr. The trial evidence established that Petitioner was upset because his father had beaten his stepmother on the previous night.

Once police learned that Rouse had identified Petitioner as the shooter, Officer William Dodaro determined Petitioner's identity and address. When he arrived at Petitioner's home, Officer Dodaro observed a man and a woman standing on the sidewalk. The man matched the suspect's description, and Officer Dodaro asked if he was Dennis Paul Thompson, Jr. Petitioner answered in the affirmative, and upon being asked if he had been at his father's home earlier in the evening, Petitioner responded "yes." He was then arrested and given Miranda warnings, after which he confessed to the shootings and told authorities where he disposed of the gun. The police recovered the gun from the location Petitioner specified. Petitioner also told his aunt, Patricia Posey, that he had killed his father. Although Petitioner was eligible for the death penalty under 730 ILCS 5/5-8-1 (West 1998), the trial judge sentenced him to a term of natural life imprisonment.

## PROCEDURAL HISTORY

A detailed explanation of the procedural history is appropriate in light of Respondent's assertion that Petitioner is procedurally defaulted from raising several claims in his habeas petition. On September 17, 1996, Petitioner appealed his convictions to the Illinois Appellate Court, asserting that: (1) he had been denied his Fifth Amendment right to testify at trial; (2) he had been denied his Sixth Amendment right to effective assistance of counsel because counsel

(a) failed to move to quash and suppress his arrest statements and (b) failed to object to inadmissible hearsay evidence; and (3) the trial court erred in failing to reduce his conviction from first- to second-degree murder due to the existence of mitigating factors. On July 21, 1997, the Appellate Court affirmed his conviction and sentence. *People v. Thompson*, 713 N.E.2d 832 (1st Dist. 1997).

On August 22, 1997, Petitioner filed for leave to appeal to the Illinois Supreme Court, asserting that the Appellate Court erred in holding that: (1) Petitioner's Miranda rights were not violated when police questioned him before placing him under arrest; and (2) Petitioner's Sixth Amendment right to effective assistance of counsel was not violated when counsel failed to move to quash and suppress his arrest statements. The Illinois Supreme Court denied the petition on December 3, 1997. *People v. Thompson*, 689 N.E.2d 1145 (1997).

On May 21, 1998, Petitioner filed for post-conviction relief in the Circuit Court of Cook County under 725 ILCS 5/122-1 (West 1998), asserting that: (1) his Miranda rights were violated when he was interrogated prior to being placed under arrest; (2) his Fifth Amendment right to testify was violated when his attorney told him he could not testify; and (3) his Sixth Amendment right to effective assistance of counsel was violated because his counsel (a) failed to move to quash his arrest and failed to move to suppress his incriminating statements, (b) failed to allow Petitioner to testify despite his desire to testify, (c) failed to object to inadmissible hearsay, (d) failed to obtain a psychological evaluation, (e) failed to call witnesses at trial and at the sentencing hearing who he knew existed and were willing to testify, and (f) forced Petitioner to waive his right to a jury trial. The Circuit Court of Cook County granted the State's motion to dismiss the post-conviction petition on May 21, 1999 without an evidentiary hearing.

Petitioner appealed the dismissal of his post-conviction petition to the Illinois Appellate Court, which determined that the Circuit Court had acted properly in dismissing his post-conviction petition because he had failed to make a substantial showing that he was denied a constitutional right at trial. *People v. Thompson*, 797 N.E.2d 245 (1st Dist. 2001). Petitioner sought leave to appeal the dismissal of his post-conviction petition to the Illinois Supreme Court making the same claims he had in his original post-conviction petition, but with the additional claim that the trial court erred in not granting his motion for a reduction of first- to second-degree murder based upon mitigating factors. The Illinois Supreme Court denied his petition on February 6, 2002. *People v. Thompson*, 766 N.E.2d 244 (2002).

Petitioner filed this instant petition for a writ of habeas corpus on April 9, 2002, alleging that: (1) he was denied his Sixth Amendment right to effective assistance of counsel as a result of (a) counsel's failure to move to quash his arrest statements, (b) counsel's failure to allow him to testify, and (c) other errors; (2) the trial court erred in not granting his motion for reduction of his first-degree murder conviction based on mitigating factors; (3) he was denied his Fifth Amendment right to testify when counsel told him he could not testify; (4) the trial court abused its discretion when it failed to grant him a reduction of his first-degree murder conviction; and (5) he was denied ineffective assistance of counsel due to counsel's failure to call key witnesses, including his stepmother.

On July 19, 2002, this Court granted Petitioner leave to file an amendment to his habeas petition, in which he asserts essentially the same allegations of ineffective assistance of counsel, including: (1) counsel's failure to interview or call as a witness his mother, Darlene Henderson; (2) counsel's failure to obtain psychological testing to evaluate Petitioner's mental state; (3)

4

counsel's statement that he could not afford a psychological evaluation, even though counsel knew the State would pay for the test; and (4) counsel's failure to allow Petitioner to testify on his own behalf to establish that he acted under extreme mental or emotional disturbance.

## **DISCUSSION**

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997); *see also Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d 1363, 1370 (7th Cir. 1994) (en banc) ("[F]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law."). The federal courts may not grant habeas relief under Section 2254 unless the state court's judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Before a federal court may review the merits of a habeas petition, a petitioner must: (1) exhaust all remedies available in state court; and (2) fairly present any federal claims in state court first, or risk procedural default. *See Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001) ("Failure to exhaust available state court remedies constitutes a procedural default."); *see also Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996). "The habeas petitioner must present his federal constitutional claims initially to the state courts in order to give the state 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'"

5

*McGowan v. Miller*, 109 F.3d 1168, 1172 (7th Cir. 1997) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

A petitioner may exhaust his state court remedies "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir. 1985). In this case, exhaustion is not an issue. Respondent concedes that Petitioner has exhausted his state court remedies for purposes of federal habeas review because he has no further avenues in state court through which to challenge his convictions. We now turn to the issue of procedural default.

## I. Procedural Default

The procedural default hurdle forbids federal courts from addressing claims that were not fairly presented to the state court. *Jones v. Washington*, 15 F.3d 671, 675 (7th Cir. 1994). Procedural default occurs when the petitioner fails to present a claim to the state court at the time, and in the way, required by the state. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996). In Illinois, a habeas petitioner is required to raise all arguments before the Illinois Supreme Court, even though that court has discretionary control over its docket. *O'Sullivan v. Boerckel*, 526 U.S. 838, 843 (1999). In order to preserve claims for federal habeas review, a petitioner must provide the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. In Illinois, one complete round is finished once a petitioner has presented the habeas claims, whether on direct appeal or on post-conviction appeal, at each stage of the appellate process, up

through and including the Illinois Supreme Court. *See id.* at 847-48; *White v. Godinez*, 192 F.3d 607, 608 (7th Cir.1999).

In this case, Petitioner has procedurally defaulted on three claims – his first, second and fourth claims. As part of Petitioner's first claim, he argues that his trial counsel was ineffective for failing to object to Rouse's dying declaration that Petitioner shot her as inadmissible hearsay evidence. This issue was not presented to the Illinois Supreme Court after the Illinois Appellate Court denied the claim on direct appeal. *People v. Thompson*, No. 1-95-2040, at 7. In addition, Petitioner withdrew this claim from consideration in the post-conviction context. *People v. Thompson*, No. 1-99-2686, at 4. Because Petitioner failed to raise this claim consistently through one complete round of the state's appellate review process, the claim is procedurally defaulted.

In his second claim, Petitioner argues the trial court erred in not granting his motion to reduce his first-degree convictions to second degree based on the existence of mitigating evidence. This claim also is procedurally defaulted because, while he raised it on direct appeal to the Illinois Appellate Court, he failed to raise the issue on appeal to the Illinois Supreme Court.

Finally, in Petitioner's fourth claim, he argues the trial court abused its discretion in not granting the first- to second-degree reduction. While he raised this claim in his petition for post-conviction relief in the Circuit Court of Cook County and on appeal to the Illinois Appellate Court, this claim is defaulted because he failed to raise it on appeal to the Illinois Supreme Court. The Illinois courts were not afforded "one complete round" to resolve these issues. Therefore, these claims are procedurally defaulted.

A federal court may nonetheless address the merits of a procedurally defaulted claim if the petitioner can establish cause and prejudice that would excuse it or, alternatively, establish that he fits within the miscarriage of justice exception to the cause and prejudice rule. *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Wainwright v. Sykes*, 433 U.S. 72 (1977). Beginning with the cause and prejudice standard, the Supreme Court has interpreted "cause" under this test to be something external to the petitioner which is both beyond his control and which cannot be fairly attributed to him. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In order to establish prejudice, the petitioner "must show not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Petitioner has failed to establish cause and prejudice in these claims. He has failed to show any cause for his failure to raise these issues on appeal to the Illinois Supreme Court, such as interference by officials or the unavailability of the factual or legal basis of the claim. Moreover, Petitioner has failed to establish prejudice because he has not shown that the alleged errors infected the entire trial with constitutional error.

Although Petitioner has failed to establish cause and prejudice to excuse his procedural default, he can still overcome this forfeiture by showing that he fits within the "miscarriage of justice" exception. This exception is limited to those extraordinary cases in which a petitioner is actually innocent of the crime for which he is imprisoned. *Bell v. Pierson*, 267 F.3d 544, 551 (7th Cir.2001). Therefore, it requires a colorable claim of actual innocence, as opposed to legal innocence, coupled with an allegation of a constitutional claim. *See Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992). The miscarriage of justice exception applies only if the petitioner can

8

demonstrate that it is more likely than not that no reasonable jury would have convicted him in the absence of the alleged defect in the state court proceedings. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

In this case, Petitioner fails to satisfy the miscarriage of justice requirement. The evidence presented at trial established that Petitioner fatally shot his father and Rouse from close range. Petitioner confessed to the murders and told authorities where he had disposed of the gun. Police recovered the gun from the location he specified. Petitioner also confessed the murders to his aunt. The strong evidence supporting Petitioner's guilt establishes that there has been no miscarriage of justice. Accordingly, part of claim one and claims two and four are barred from federal habeas review.

## II.    Merits of the Claims Properly Presented

Section 2254 governs the consideration of any claim adjudicated by a state court on its merits. Under that statute, we may grant habeas relief only if the state court's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under subsection (d)(2), habeas relief is possible if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in the state court.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court attempted to clarify the applicable standard of review within the meaning of section 2254. The Court noted that the statute does not explicitly prescribe a recognizable standard of review for applying either of the statutory clauses. *Id.* at 385. Recognizing the need for further clarification and direction to

lower courts, the Court concluded that the "[the statute] plainly sought to ensure a level of deference to the determinations of state courts, as long as those decisions do not conflict with federal law or apply federal law in an unreasonable way." *Id.* at 376. Additionally, the Court determined that, in passing the statute, "Congress wished to curb delays, to prevent retrials on federal habeas petitions and to give effect to state convictions to the extent possible under the law. When federal courts are able to fulfill these goals within the bounds of the law, [the statute] instructs them to do so." *Id.* Therefore, this Court is directed to apply a deferential review of state court decisions unless it determines that the state court violated federal law.

### A. Ineffective Assistance of Counsel

Petitioner argues that he was denied his Sixth Amendment right to effective assistance of counsel. The standard for reviewing a claim of ineffective assistance of counsel was set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* applies a two-prong analysis for determining ineffectiveness of counsel: (1) showing that counsel's performance was deficient; and (2) showing that the deficient performance prejudiced the defendant. *Id.* at 678. In order to prevail on his claim of ineffectiveness under the first prong of the *Strickland* test, Petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Id.* In reviewing the challenged conduct, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* To satisfy the second prong of the *Strickland* test, Petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. *Id.* This Court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of

the alleged deficiencies." *Id.* Rather, "[i]f it is easier to dispose of an ineffective assistance of counsel claim based on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed." *Id.*

In the first claim of his habeas petition, Petitioner asserts that he was denied his Sixth Amendment right to effective assistance of counsel as a result of his lawyer's failure to move the trial court to quash and suppress his arrest statements. The Illinois Appellate Court held that the decision to file a motion to quash or suppress is one of trial strategy and is left to the trial counsel's discretion. *People v. Thompson*, 1-95-2040, at 5. The court noted that Petitioner's motion likely would have been denied by the trial court because Petitioner's incriminating arrest statements were validly obtained (*id.* at 6), and the police had probable cause to arrest Petitioner based on his statement that he had been at his father's home earlier that evening. Further, the background questions asked by Officer Dodaro were found not to have violated his Miranda rights. *Id.* (citing *People v. Dalton*, 91 Ill.2d 22, 26 (1982)). Citing the standards enunciated in *Strickland*, the Illinois Appellate Court held that the defendant could not overcome the strong presumption that counsel's decision was within the "'range of competence demanded of attorneys in criminal cases.'" *People v. Thompson*, No. 1-95-2040, at 5-6 (quoting *Strickland*, 466 U.S. at 687).

Based on the foregoing analysis, this Court agrees with the Illinois Appellate Court's application of federal law. Counsel's decision not to file a motion to suppress Petitioner's arrest statements was trial strategy subject to counsel's discretion. *Id.* Even if counsel had succeeded in quashing Petitioner's arrest statements, there still was overwhelming evidence of Petitioner's guilt and the results of the proceeding likely would not have been different. Petitioner's claim

11

that he was denied his right to effective assistance of counsel as a result of counsel's failure to move to quash and suppress his arrest statements fails both prongs of the *Strickland* test.

Petitioner also argues in his first claim that counsel was ineffective in other respects. He argues that, had counsel presented testimony by a qualified mental health expert that he was operating under extreme emotional distress, depriving him of the ability to present "competent and mitigating evidence," the outcome of the trial would have been different. This claim lacks merit due to the overwhelming evidence presented against Petitioner at trial. Any testimony offered by a mental health expert as to Petitioner's emotional distress was unlikely to have changed the outcome of the trial. Given that the trial judge was lenient in granting him life imprisonment instead of death, it is also unlikely that expert testimony would have affected his sentence.

Another argument made by Petitioner was that counsel deprived him of an opportunity at sentencing to present mitigating evidence by failing to call several witnesses to testify, including his mother. In the fifth claim in his habeas petition, Petitioner makes the same argument that he was denied his right to effective assistance of counsel due to counsel's failure to call his stepmother to testify at sentencing. These claims lack merit because the judge, who had already heard testimony at trial of Thompson Sr.'s long history of physical and verbal abuse toward Petitioner and other family members, granted Petitioner leniency by sentencing him to life imprisonment instead of death. We agree with the finding of the Illinois Appellate Court: "Defendant [has failed] to show how additional testimony would have affected his trial or his sentencing hearing except for the conclusory claim that it would have constituted mitigating evidence." *People v. Thompson*, No. 1-99-2686, at 14.

12

Petitioner also argues that counsel would not permit him to testify at trial despite his desire to do so. Petitioner did not notify the court, however, that he wished to testify even when the defense rested without having called him as a witness. Petitioner also fails to state how his testimony would have changed the outcome of the case. Without establishing a basis for how his testimony would have changed the result, Petitioner has failed to establish how counsel's actions were prejudicial.

Finally, we granted Petitioner leave to file additional habeas claims on July 19, 2002. These additional claims were the same allegations of ineffective assistance of counsel as those described above. We hold that there is no reasonable probability that, but for counsel's alleged errors, the results of Petitioner's trial would have been different. We hold that the Illinois Appellate Court properly applied federal law in determining that Petitioner's claims fail to establish sufficient prejudice under the second prong of *Strickland*.

### B.   Fifth Amendment Right to Testify

Petitioner's third claim in his habeas petition is that he was denied his Fifth Amendment right to testify as a witness on his own behalf when trial counsel told him he could not testify. A criminal defendant has a constitutional right to testify on his own behalf under the Fifth Amendment's Due Process Clause. *Rock v. Arkansas*, 483 U.S. 44, 49-53 (1987); *Morgan v. Krenke*, 232 F.3d 562, 569 (7th Cir.2000). For purposes of state criminal proceedings, like this one, the right to testify arises out of the Fourteenth Amendment's Due Process Clause. U.S. Const. Amend. XIV ("[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."). The right to take the stand on one's own behalf is personal to the

defendant, which means that it can only be waived by the defendant himself, and not by his counsel. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Federal courts have held, however, that a defendant's silence at trial effectively waives his right to testify on his own behalf. *United States v. Edwards*, 897 F.2d 445, 446 (9th Cir. 1990). When a defendant's attorney makes a tactical decision not to have his client testify and the court was not alerted to the defendant's desire to testify, "[t]o hold that a defendant may abide by his lawyer's advice and not take the stand and then invalidate the trial because he so acted is not fair to the government." *Id.* (quoting *United States v. Martinez*, 883 F.2d 750, 761 (9th Cir. 1989)).

In this case, Petitioner failed to notify the trial court of his desire to testify. As the Illinois Appellate Court held, Petitioner's waiver of his right to testify is presumed because of his failure to notify the court. *People v. Thompson*, No. 1-99-2686, at 16. Equally important, Petitioner fails to state in his habeas petition how his testimony would have changed the outcome of the case. Therefore, we deny Petitioner's request for habeas relief on this ground.

## CONCLUSION

For all of the foregoing reasons, we deny the § 2254 petition for a writ of habeas corpus brought by Petitioner Dennis Thompson, Jr.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: June 17, 2004

14